UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BRUCE DUNN, | * | CIVIL ACTION |
| Plaintiff | * | NUMBER: 11-495-JJB-DLD |
| | * | |
| | * | |
| vs. | * | |
| | * | |
| LOUISIANA DEPARTMENT OF PUBLIC | * | JUDGE: JAMES J. BRADY |
| SAFETY AND CORRECTIONS and | * | |
| JAMES M. LEBLANC, Secretary | * | MAGISTRATE |
| of the Louisiana Department of Public Safety | * | JUDGE: DOCIA L. DALBY |
| and Corrections, | * | |
| Defendants, | * | |

**FIRST AMENDED COMPLAINT**

I. INTRODUCTION

1.      Plaintiff, an individual with a disability who is a resident of Lafayette, Louisiana brings this action complaining of defendants' violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (hereafter "the ADA") and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (hereafter "the Rehabilitation Act").  Plaintiff contends the Louisiana Department of Public Safety and Corrections, through its Office of Motor Vehicles, discriminated against him based on his disability.  Plaintiff seeks a declaratory judgment that defendants are in violation of these statutes; a permanent injunction ordering that they come into

1

compliance; damages associated with defendants' violations of the law; and attorneys' fees and costs.

## II. PARTIES

2. Plaintiff Bruce Dunn is an individual with a disability, as that term is used and defined in the ADA and the Rehabilitation Act. He is hard of hearing. He is a resident of Lafayette, Louisiana.

3. Defendant James M. LeBlanc is the Secretary of the Louisiana Department of Public Safety and Corrections ("DPSC"). He is sued in his official capacity only.

4. DPSC is a state agency and a public entity as that term is used and defined in the ADA and the Rehabilitation Act. It is a recipient of federal financial assistance as that term is used and defined in the Rehabilitation Act.

## III. JURISDICTION AND VENUE

5. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under Title II of the ADA and the Rehabilitation Act, both of which are federal statutes.

6. Venue is appropriate in this district pursuant to 28 U.S.C.A. § 1391(b)(1) because this is the judicial district in which defendants reside and perform official duties.

## IV. FACTS

7. Plaintiff is an adult individual with a disability that substantially limits the major life activities of hearing and speaking. As a result of his disability, Plaintiff uses hearing aids in both ears. He also communicates primarily through American Sign Language (ASL) in situations in which people without disabilities normally communicate orally. He is a resident of Lafayette, Louisiana.

8. Over the course of several months in 2010, the Plaintiff sought a commercial driver's license, Class A. Though he meets the State's pre-examination qualifications, the Office of Motor Vehicles denied him meaningful access to the examination for this license.

9. The Louisiana Department of Public Safety and Corrections is a state entity that oversees the Office of Motor Vehicles, ("OMV"). Upon information and belief, the OMV is a recipient of federal funding.

10. Mr. Dunn is a "qualified individual with a disability" because he is an individual with a disability who, with reasonable modifications to OMV practices and with the provision of auxiliary aids and services, meets the essential eligibility requirements for a commercial driver's license.  42 U.S.C.A. § 12131(2).

A. **Commercial Driver's Licensing**

11. Pursuant to La. Rev. Stat. § 32:408 *et seq.*, DPSC has promulgated, and is responsible for enforcing, regulations regarding the licensing of commercial truck drivers. La. Admin. Code, Tit. 55, Part III, § 103 *et seq.*

12. Before an individual is granted a Class A commercial driver's license ("CDL"), he or she is required to take knowledge and skills tests consistent with the Federal Motor Carrier Safety guidelines set forth at 49 C.F.R. § 383.23.

13. Classes for the Class A CDL are offered by schools accredited by the OMV. La. Admin. Code, Tit. 55, Part III, § 101.

14. The OMV requires an applicant to obtain a learner's permit prior to enrolling in CDL training courses. The learner's permit is issued for 60 days, and can be re-issued at the

discretion of the OMV. An individual who obtains a Class A CDL learner's permit may then enroll in CDL training courses.

15. Prior to taking the test for a Class A CDL, the individual must also pass the OMV-required "Medical Examination Report For Commercial Driver Fitness Determination." La. Rev. Stat. 32:403.4. In accordance with 49 C.F.R. 381.41(b)(11), the examination requires a minimum level of hearing ability, specifically that the applicant driver be able to "(a) first perceive a forced whispered voice, in one ear, at not less than five feet, or (b) have an average hearing loss, in one ear, less than or equal to 40 decibels."

16. Once the holder of a Class A CDL learner's permit passes the medical fitness determination, he is eligible to take the examination for an unrestricted license. La. Rev. Stat. §32:403.4.

17. Class A CDL tests may be administered by "third party testers," which may be the schools providing instruction. OMV is responsible for regulating the third party testers, pursuant to La. Admin. Code, Tit. 55, Part III §§ 117 and 119.

18. The Class A CDL exam contains three parts. An applicant must pass each part in order to proceed to the next part. The first part is an oral examination, sometimes called the "pre-inspection" exam, which requires the individual seeking a license to verbally identify proper pre-trip inspection procedures. The second part of the exam is the "backing pad" exam, in which the applicant is required to reverse in the commercial vehicle. The third part of the exam is the "open road" driving test.

19. On information and belief, there is no restriction on the number of times the individual may take and re-take the Class A CDL test while his learner's permit is valid.

20. According to OMV's website, if an individual does not pass the test for the Class A CDL while his learner's permit is valid and if under OMV's discretion the permit is not extended, the permit expires, and he must re-take the Class A CDL course again in order to receive a learner's permit.

**B.     Plaintiff's Attempts to Obtain a Class A Commercial Driver's License**

21. Bruce Dunn submitted to a medical examination in order to obtain a "Medical Examination Report for Commercial Driver Fitness Determination" on September 3, 2009. His physician, Dr. Daniel Salmeron, certified that Mr. Dunn passed this examination and is eligible for a Class A commercial driver's license, with required re-examination one year from the date of his eligibility determination.

22. Mr. Dunn obtained a CDL learner's permit on April 16, 2010 from OMV and enrolled in commercial driving classes at Coastal Truck Driving School ("Coastal") in Opelousas, Louisiana. Coastal is an OMV-accredited instructor and is certified as a third-party tester by OMV.

23. Throughout his instruction by Coastal, which occurred over the course of 8 weekends in the spring of 2010, Mr. Dunn used an ASL-interpreter in each class so that he could understand the instruction and communicate with his instructor.

24. Mr. Dunn successfully completed his course with Coastal Trucking on May 29, 2010 and was given a certificate of completion.

5

25. After he received his learner's permit, Mr. Dunn scheduled his first test, covering the first sub-section of a final Class A CDL exam, for June 5, 2010 with an examiner from Coastal administering the test.

26. On June 4, 2010, Stephanie Berard, an administrative employee of Coastal informed Mr. Dunn that he would not be allowed to use a sign language interpreter during the test. She told Mr. Dunn that he would be allowed to write down his pre-trip inspection procedures for the exam.

27. Mr. Dunn arrived at his exam on June 5, 2010. Immediately prior to the test, the examiner with Coastal, whom Mr. Dunn had not previously met, told Mr. Dunn that he would not be allowed to write down his explanation to the examiner of the proper pre-inspection procedures. Because of this failure to provide him with an accommodation that would afford him the opportunity to communicate his knowledge of the test subject matter, Mr. Dunn decided to reschedule the test.

28. Mr. Dunn's first learner's permit expired on June 15, 2010. He got it renewed on July 22, 2010, and the new expiration date was September 20, 2010.

29. Mr. Dunn rescheduled his test for July 23, 2010 with Coastal. Even though this retest was scheduled with Coastal, OMV employees were present, including Kimberly Watson and Cliff Langois, as well as several other OMV observers that were not introduced to Mr. Dunn. Mr. Dunn was accompanied by his instructor at Coastal, Mark Hawkins.  Kimberly Watson of OMV told Mr. Dunn that he was not allowed to use an interpreter.  When he requested permission to write his answers, Ms. Watson refused his request.

30. Because Mr. Dunn has a disability, OMV subjected him to different testing conditions from those experienced by licensed applicants without disabilities, including the

6

presence and participation of multiple examiners, and of multiple officials of OMV. All four observers from OMV remained present for this exam.

31. Though she knew of Mr. Dunn's disabilities and his need for auxiliary aids and services in order to communicate effectively, Ms. Watson forced Mr. Dunn to try to vocalize his answers. Through gestures and attempts to verbalize, Mr. Dunn attempted to complete this test. Mr. Dunn is not certain of the exact results of this test, but Mr. Hawkins indicated at the time that he did not pass.

32. Mr. Dunn scheduled a retest for July 28, 2010 with Coastal. On July 28, 2010 he arrived at the test site to again find employees of OMV present, including Mr. Cliff Langois. Mr. Dunn was again accompanied by his instructor with Coastal, Mark Hawkins. Mr. Dunn intended to retake the pre-inspection exam, but, because another applicant was taking the first portion of the test at that time, Mr. Langois asked that Mr. Dunn take the second test, the backing pad test instead.

33. Again, because Mr. Dunn has a disability, OMV subjected him to different testing conditions than those that are normally applied to applicants, including the presence and participation of multiple examiners, and of multiple officials of OMV. Mr. Langois instructed Mr. Hawkins to read the instructions for the backing pad exam verbally to Mr. Dunn and Mr. Langois made no attempt to ensure Mr. Dunn understood these instructions. Mr. Langois also videotaped the exam. On information and belief, videotaping is not part of the OMV testing protocol, and was an unusual measure. Mr. Langois also required Mr. Hawkins to wear sunglasses to prevent him from providing any visual hints to Mr. Dunn. This restriction is not normally applied to persons who take the commercial licensing exam.

34. Mr. Dunn did not pass this second section of the test because of the atypical conditions of the test, including the presence of additional individuals and the videotaping. These circumstances subjected him to an unusual level of scrutiny and made him nervous, which impaired his performance on the test.

35. Mr. Hawkins attempted to get another test scheduled for Mr. Dunn. Mr. Hawkins communicated many times with Mr. Langois to schedule a re-test. Mr. Langois did not reschedule the test, but told Mr. Hawkins repeatedly that the file was "on hold" and "on review."

36. While he was attempting to reschedule the test with OMV, Mr. Hawkins recommended that Mr. Dunn retake the "Medical Examination Report for Commercial Driver Fitness Determination" again in the hope that it might help persuade the OMV of Mr. Dunn's qualifications and remove OMV's apparent opposition to his obtaining his Class A CDL. Mr. Dunn submitted to another medical examination on September 3, 2010 and Dr. Daniel Salmeron again certified that Mr. Dunn meets all medical requirements for a Class A commercial driver's license.

37. Mr. Dunn's learner's permit expired on September 20, 2010. On September 16, 2010, Stephanie Berard of Coastal gave Mr. Dunn a copy of a letter dated September 13, 2010, from Kimberly Watson of OMV addressed to another Coastal administrator, Casey Cox. The letter stated "the Department of Public Safety has determined that Mr. Dunn is not qualified to be issued a Commercial Driver License. He does not meet the requirements set forth in the Federal Motor Carrier Safety Regulations necessary to obtain this type of license." OMV did not include any specific information as to how DPSC determined that Mr. Dunn was not qualified, or cite any specific regulations that set forth qualifications that Mr. Dunn allegedly did not meet. Mr.

Dunn attempted to get further explanation of the reasons for DPSC's determination that he is not qualified by writing to Ms. Watson directly, but she did not respond.

38.     Plaintiff's attorneys have requested that Defendants give Mr. Dunn the opportunity to retest using an ASL interpreter or other form of reasonable accommodation, such as the ability to write down answers to the examination. Defendants refused this request

39.     Mr. Dunn had been offered a position with a transport service upon completion of his classes from Coastal that he would have been able to accept as soon as he was able to obtain his CDL-A, and therefore Mr. Dunn has suffered a loss in income.

40.     Because of Defendants' actions in subjecting Plaintiff to discriminatory testing conditions, denying him reasonable accommodations in the testing process, and denying him the opportunity to retest for his commercial drivers' license because of his disability, Plaintiff suffered humiliation and acute mental anguish and emotional distress.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION - AMERICANS WITH DISABILITIES ACT

41.     Plaintiff re-alleges and incorporates each and every foregoing paragraph.

42.     Title II of the ADA provides that " . . . no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132.

43.     By failing to provide him with an ASL interpreter or other form of reasonable accommodation and refusing to retest him, Defendants have denied the Plaintiff the opportunity to participate in or benefit from its aids, benefits, or services. 42 U.S.C. § 12132; 28 C.F.R. § 35.130 (b)(1)(i).

44. Defendants deviated from normal testing procedures by having Plaintiff's driving test attended by multiple representatives from OMV and by filming the test, creating an uncomfortable atmosphere during Plaintiff's driving test. Defendants have additionally refused to schedule a re-testing for Plaintiff. In so doing, Defendants have not afforded the Plaintiff an opportunity to participate in or benefit from an aid, benefit, or service, in a way that is equal to that afforded others who do not have disabilities. 42 U.S.C. § 12132; 28 C.F.R. § 35.130 (b)(1)(ii).

45. By requiring Plaintiff to take his driving test while being filmed, where this procedure is not standard, and by refusing to allow Plaintiff the opportunity to re-take the test, Defendants have provided its aids, benefits, and services to Plaintiff, an individual with a disability, in a manner that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others, in violation of 42 U.S.C. § 12132; 28 C.F.R. § 35.130 (b)(1)(iii).

46. By refusing to allow Plaintiff the opportunity to retake his driving examination, despite the fact that Plaintiff is medically qualified to hold a commercial driver's license, Defendants are utilizing criteria or methods of administration that subject Plaintiff to discrimination on the basis of disability. 42 U.S.C. § 12132; 28 C.F.R. § 35.130 (b)(3)(i).

47. By subjecting Plaintiff to discriminatory testing conditions, denying him reasonable accommodations in the testing process, and denying him the opportunity to retest for his commercial drivers' license because of his disability, Defendants administer a licensing program in a manner that subjects Plaintiff to discrimination on the basis of disability. 42 U.S.C. § 12132; 28 C.F.R. § 35.130(b)(6).

48. Defendants failed to make reasonable modifications to their policies, practices, or procedures that were necessary in order to avoid discrimination on the basis of disability. 42 U.S.C. § 12132; 28 C.F.R. § 35.130 (b)(7).

49. Defendants failed to provide Plaintiff with an interpreter or other auxiliary aid or service, such as written notes, instead forcing Plaintiff to attempt to speak his answers to an oral exam, in violation of § 28 C.F.R. § 35.160(a) and (b).

50. Defendants' actions described above have violated and continue to violate the Americans with Disabilities Act.

## SECOND CAUSE OF ACTION – REHABILITIATION ACT

51. Plaintiff re-alleges and incorporates each foregoing paragraph.

52. The Rehabilitation Act of 1973 is binding on Defendants by virtue of Defendants' receipt of federal financial assistance received from the Department of Transportation.

53. Defendants are under a duty to ensure that "no qualified handicapped person, shall, on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity that receives or benefits from federal financial assistance." 28 C.F.R. § 41.51. Defendants are also responsible to "ensure that communications with their applicants, employees, and beneficiaries are available to persons with impaired vision and hearing". 28 C.F.R. § 41.51.

54. Defendants have failed to comply with the Rehabilitation Act and its implementing regulations by excluding Plaintiff from participation, denying him effective communication and otherwise discriminating against him, on the basis of his disability, in the programs, services, and activities offered by the OVM by:

(a) Denying him an ASL interpreter and other reasonable accommodations at all stages of his Class A commercial driver's license examination;

(b) Subjecting him to discriminatory testing conditions due to the fact that he is hard of hearing;

(c) Intentionally denying him the opportunity to retest for the Class A commercial driver's license examination before his learner's permit to expired;

(d) Otherwise subjecting plaintiff to discriminatory terms and conditions of testing for his Class A commercial driver's license.

55. Defendants have failed and continue to fail to provide Plaintiff with benefits and services that are as effective in affording equal opportunity to gain the same benefit as members of the community who do not have disabilities.

56. Defendants' actions and failures to act, described above, have violated, and continue to violate, the Rehabilitation Act of 1973, as amended.

## DAMAGES

57. Plaintiff has suffered damages due to the discriminatory treatment and practices of Defendants, including embarrassment, humiliation, delay in realizing a professional goal, and loss of increased income due to this delay.

## INJUNCTIVE RELIEF

58. Because, absent such relief, Plaintiff will continue to experience unlawful discrimination as a result of Defendants' failure to comply with Title II of the ADA and the Rehabilitation Act, injunctive relief is necessary in order to require Defendants to implement policies to ensure Class A commercial driver's license testing is accessible to individuals with disabilities.

59. Moreover, there are reasonable grounds to believe that Defendants will continue to engage in acts and practices prohibited by these statutes.

## DECLARATORY RELIEF

60. Plaintiff is also entitled to a declaratory judgment concerning each of Defendants' statutory violations and specifying the rights of Plaintiff as to Defendants' program, activities, and services.

## ATTORNEYS' FEES AND COSTS

61. In order to enforce his rights under the ADA and the Rehabilitation Act, Plaintiff has had to retain counsel and is therefore entitled to recover attorney fees, costs, and expenses.

## PRAYER FOR RELIEF

62. Therefore, Plaintiff requests that the Court:

    A. Issue a permanent injunction, requiring Defendants, its agents, servants, and employees, and all persons in active concert with Defendants, to make all necessary modifications to the programs, services, and activities offered therein, that prevent ready access to, and use by, the Plaintiff, and enjoining them from violating Title II of the ADA and the Rehabilitation Act by discriminating against Plaintiff in his utilization of Defendants' programs, services, and activities.

    B. Enter a declaratory judgment, specifying Defendants' statutory violations and declaring the rights of the Plaintiff as to the Defendants' programs, services, and activities.

    C. Find that Plaintiff is the prevailing party in this case and award him damages, attorney fees, costs, and expenses; and

    D. Order such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Date:  November 15, 2011

                Respectfully submitted,

                _____s/Adrienne Cousins_____
                Adrienne Cousins La. Bar No. 32388
                acousins@advocacyla.org
                Susan Meyers, La. Bar No. 29346
                smeyers@advocacyla.org
                Advocacy Center
                8325 Oak Street
                New Orleans,  Louisiana 70118-2043
                Telephone: 504-522-2337
                Facsimile: 504-522-5507

                ATTORNEYS FOR PLAINTIFF