UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| BRUCE DUNN, | CIVIL ACTION<br>NUMBER: 11-495-JJB-RLB |
| VERSUS | JUDGE: JAMES J. BRADY |
| LA DEPARTMENT OF PUBLIC<br>SAFETY & CORRECTIONS, *et al* | MAGISTRATE JUDGE:<br>RICHARD L. BOURGEOIS |

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

**NOW INTO COURT**, through undersigned counsel, come the defendants herein, **THE LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS** and **JAMES M. LEBLANC, SECRETARY OF THE DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS**, who respectfully submit this Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, to wit:

## INTRODUCTION

The Plaintiff herein, Mr. Bruce Dunn, has filed a Motion for Summary Judgment in this matter asserting that there are no genuine issues of material fact that exist, and as such, he is entitled to a Judgment as a matter of law. However, Defendants respectfully contend that Plaintiff's contentions are not supported to by applicable law and available evidence, and that he is not entitled to Summary Judgment because there currently remain several significant genuine issues of material fact in this matter.

# FACTS

The above referenced matter is a cause of action brought under the American's With Disabilities Act (ADA) and the Rehabilitation Act of 1973 and regards alleged discriminatory treatment suffered by Mr. Dunn based upon the Defendants' determination that the Plaintiff was not qualified to obtain a Commercial Driver's License (CDL).

## THE OFFICE OF MOTOR VEHICLES:

As stated above, the Defendant in this matter is the State of Louisiana through the Department of Public Safety & Corrections. However, the actual agency involved is the Louisiana Office of Motor Vehicles (OMV).

OMV is the state regulatory authority responsible for the licensing and registration of all drivers and motor vehicles operating in the State of Louisiana. Among the responsibilities assigned to OMV testing, regulation and licensing of Commercial Vehicles as well as the individuals that legally operate such vehicles. OMV's responsibilities in this arena include the regulation and oversight of Commercial Driving Schools as well as oversight of those individuals and entities who conduct the testing of qualified individuals seeking to obtain a Commercial Driver's License in the State of Louisiana.

Additionally, OMV is also responsible for the interpretation and enforcement of the applicable State and Federal laws, policies and regulations governing the operation of Commercial Vehicles and the issuing of CDL's in Louisiana. In particular, OMV is responsible for the interpretation and enforcement of the Federal Motor Carrier Safety Regulations (FMCSR) which provide much of the substantive and procedural law applicable to the licensing and regulation of Commercial Motor Vehicles and their operators. The FMCSR are promulgated by

the United States Department of Transportation (DOT), and the FMCSR provides the regulations and guidelines concerning the method, manner and procedure that must be followed by those conducting testing of a potential CDL licensee. Furthermore, the FMCSR also contained the specific qualifications that an individual must meet and/or possess in order to be legally qualified to obtain a CDL. In other words, the FMCSR provides much of the federal regulation concerning who, when, where and how Commercial Vehicles are to be operated in the United States.

### QUALIFICATION FOR CDL DRIVERS:

The regulations pertaining to and outlining the specific qualifications for a CDL driver are contained in Part 391 of the FMCSR which is located at 49 C.F.R. §391. In particular, the General Qualifications for CDL Drivers are found in 49 C.F.R. §391.11 and continue through §391.71. Accordingly, 49 C.F.R. §391.11(b) outlines 8 general qualifications that must be met by CDL Drivers. Among those, 49 C.F.R. §391.11(b)(2) mandates that a CDL Driver be able to:

> [R]ead and speak the English language sufficiently to converse with the general public, to understand highway traffic signs and signals in the English language, to respond to official inquiries, and to make entries on reports and records….

In addition thereto, 49 C.F.R. §391.41 outlines the physical qualifications for CDL Drivers. In particular, 49 C.F.R. §391.41(b)(11) states:

> (b) A person is physically qualified to drive a commercial motor vehicle if that person – ….
>
> (11) First perceives a forced whisper voice in the better ear at not less than 5 feet with or without the use of a hearing aid or, if tested by use of an audiometric device, does not have an average hearing loss in the better ear greater than 40 decibels at 500 Hz, 1,000 Hz and 2,000 Hz with or without a hearing aid when the audiometric device is calibrated to American National Standard (formerly ASA Standard) Z24.5-1951.

Furthermore, 49 C.F.R. §391.43(f) sets forth the manner by which the medical examiner shall perform and record his examination of a CDL applicant. This includes the specific instructions by which the examiner is to conduct the "forced whisper" test described in 49 C.F.R. §391.41(b)(11).

### CONDUCTING SKILS TESTS:

As stated above, the FMCSR also defines the skills upon which a CDL Driver is to be tested, the nature of those tests and the method by which such tests will be conducted. More specifically, 49 C.F.R. §383.113 defines the skills necessary for a CDL Driver. While 49 C.F.R. §383.133 outlines the specific methods for conducting each of the 3 skills tests that a CDL applicant is required to pass. Of particular note is the fact that 49 C.F.R. §383.113(a)(2)(i) requires that the test taker must "Locate and verbally identify air brake operating controls and monitoring devices." Similarly, 49 C.F.R. §383.133(c)(5) requires that

> Interpreters are prohibited during the administration of skills tests. Applicants must be able to understand and respond to verbal commands and instructions in English by a skills test examiner. Neither the applicant nor the examiner may communicate in a language other than English during skill tests.

As such, the FMCSR clearly anticipates that an applicant is expected to communicate verbally during the administration of all skills test.

### OMV'S INVOLVEMENT IN TESTING OF BRUCE DUNN:

OMV, through Cliff Langlois, was initially contacted by Mr. Mark Hawkins, a third-party tester and instructor at Coastal Trucking, regarding his questions and concerns related to the forthcoming testing of the Plaintiff. (Ex.1, 10:24) Langlois was contacted by Mr. Hawkins after a previously scheduled test of Mr. Dunn at the Coastal's Hammond Campus was aborted due to

4

another tester's unwillingness to conduct the skills test due to his concern as to whether said test could be conducted in compliance with the Federal Motor Carrier Safety Regulations. (Ex. 2:   ). Thus, Langlois was contacted by Hawkins and requested that OMV observe and co-score the skills test of Mr. Dunn. (Ex.1, 11:11-13)  Therefore, at the urging of Coastal and Mark Hawkins, OMV was asked to observe the July 16, 2010 skills test of Bruce Dunn at the Coastal's Lafayette Campus. (Ex.1, 12:11-12)

After his initial contact by Mark Hawkins, Langlois informed his supervisor, Ms. Kimberly Watson of the request for OMV to observe the Dunn skills test. (Ex.1, 12:3)  In response, Ms. Watson instructed Langlois to video tape the skills test of Mr. Dunn for future training purposes. Langlois (Ex.1, 13:1-5)

On the morning of July 16, 2010, the initial skills test of Mr. Dunn was conducted by Mark Hawkins. At the request of Hawkins and Coastal, the test was co-scored by Jim Pardoin, another CDL Consultant with OMV. (Ex.1, 12:11-12)  Also observing from OMV were Langlois's supervisor, Ms. Kim Watson, as well OMV employee Vicki Scott who was present for training purposes at the request of Ms. Watson. (Ex.1, 12:11-12)

Mr. Hawkins administered the pre-trip inspection skills test to the Plaintiff in compliance with the requirements for conducting of skills test under 49 C.F.R. §383.133(c)(5). Thus, Mr. Dunn did not have the use of an interpreter, and was required to provide verbal responses to the examiner's inquiries. (Ex.1, 13:16)

During the course of the skills test, Mr. Dunn failed to successfully complete the "brake test" portion of the skills test. (Ex. 3) According to the scoring standards of the FMCSR, this results in the automatic failure of the skills test. (Ex. 3)  However, at the urging of Mr. Langlois,

5

the Plaintiff was given the opportunity to immediately re-take the Brake Test. However, the Plaintiff again failed the Brake Test on his second attempt. (Ex. 3)

As a result of her observation of the skills test of Mr. Dunn on July 16, 2010, Ms. Watson began to have concerns that the Plaintiff was not satisfy the essential qualifications required of a CDL applicant under the FMCSR. In particular, Ms. Watson noticed that the Plaintiff was clearly unable to communicate in the English language. In addition thereto, as a result of her failed attempts to communicate with Mr. Dunn while seated behind him, she also questioned whether the Plaintiff could satisfy the "forced whisper" test described in 49 C.F.R. §391.41(b)(11). (Ex. 4)

Subsequent thereto, Mr. Dunn was allowed to test again on July 28, 2010. At that time he was again tested by Mark Hawkins while Jim Pardoin co-scored. Langlois videotaped this skills test. Unfortunately, Mr. Dunn did not pass the July 28, 2010 skills test. (Ex. 1: 24 to 25:3-8)

During the same time period Ms. Watson consulted with OMV's legal staff, members of the Louisiana State Police (Ex. 5) and officials with the U.S. Department of Transportation (Ex. 6) concerning whether Mr. Dunn meet the qualifications for a CDL licensee. Each of the individuals consulted were provided with the video tape of the July 16 skills test. Ironically, each of those consulted concluded that Mr. Dunn did not appear to satisfy the forced whisper qualification. (Ex. 5 & Ex. 6) Moreover, with the exception of the DOT, who was unwilling to comment regarding the requirement that the applicant be able to speak English, each also concluded that Mr. Dunn did not satisfy the 49 C.F.R. §391.41(b)(11) requirement. (Ex. 6) Consequently, both Coastal and Mr. Dunn were informed by written correspondence on September 24, 2010, that the Plaintiff was not qualified to obtain a CDL under the applicable provisions of the FMCSR. (Ex. 7)

Thereafter, Mr. Dunn filed the above referenced cause of action. Subsequent thereto, as a part of the discovery process, OMV retained Dr. Jack Breaux, Jr., a Board Certified Otolaryngologist, (Ex. 8) who conducted audiometric testing upon the Plaintiff and concluded that Mr. Dunn fails to meet the hearing requirements for a CDL applicant provided in 49 C.F.R. §391.41(b)(11). (Ex. 9)

## LAW & ARGUMENT

The above referenced cause of action regards the Defendant's alleged violation of the Americans with Disabilities Act and the Rehabilitation Act of 1973 based upon OMV's determination that the Plaintiff, Bruce Dunn, was not qualified to receive a Commercial Driver's License (CDL) in light of applicable provisions of the Federal Motor Carrier Safety Regulations and related state law.

To show a violation of Title II of the ADA, a plaintiff must show: 1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied benefits of a public entity's services, programs or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Concerned Parents to Save Dheher Park Center v. City of West Palm Beach*, 846 F.Supp. 987, 990 (S.D. Florida 1994). Similarly, to prevail under the Rehabilitation Act, a plaintiff must establish that he is an individual with a handicap; who is otherwise qualified, and was discriminated against based solely upon the basis of his handicap. *Chandler v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir. 1993).

Here the Plaintiff cannot prevail under either the ADA or the Rehabilitation Act based upon the fact that he is clearly not an otherwise "qualified" individual. An otherwise "qualified" individual is defined as the individual qualified to perform the essential functions of the job.

7

*Kapche v. San* Antonio, 176 F.3d 840, 843 (5th Cir. 1999.). Here, the Plaintiff is clearly unable to satisfy at least 2 essential functions outlined above.

Likewise, and despite the Plaintiff's contentions, no reasonable accommodation is available in this instance. Rather, the only suggested adjustments would require a substantial alteration of the current FMCSR. As such, this would amount to a lowering of the safety standards to which CDL licensees are currently held and, as such do not equate to a reasonable accommodation. *Southeastern v. Davis*, 442 U.S. 397, 413 (U.S. 1979).

The Plaintiff further alleges that providing Mr. Dunn with a CDL does not result in any risk to the health and safety of others. Again, this is incorrect. Because the proposed accommodation suggested by the plaintiff would require a lowering of existing safety regulations concerning the operation of commercial vehicles, it must be concluded that the potential impact upon the safety and health of others will be placed at greater risk. *Kapche v. San* Antonio, 176 F.3d 840, 844 (5th Cir. 1999.)

Finally despite the assertions of the Plaintiff, he is clearly not entitled to injunctive relief in this instance. More specifically, the Plaintiff has failed to establish 1) a substantial likelihood that he will prevail of the merits in this matter; 2) that he will suffer irreparable harm if an injunction is not entered; 3) that the threatened injury outweighs the potential harm to the Defendant; or 4) that the injunction, if issued, would not be adverse to the public interest. *Haitian Refugee Center, Inc. v. Nelson*, 872 F.2d 1555, 1561 (11th Cir. 1989). Therefore, he has failed to establish any basis upon which he is entitled to injunctive relief in this instance.

## CONCLUSIONS

In the present matter, the Plaintiff is not entitled to Summary Judgment due to the fact that genuine issues of material fact remain in dispute herein. By way of example, whether the

8

plaintiff is a "qualified" individual remains unresolved. Likewise, whether any reasonable accommodation is available to the plaintiff in this instance also remains unresolved. Therefore, the plaintiff is clearly not entitled to Summary Judgment in this matter, and his Motion should and in fact must be denied.

Date:  October 4, 2013                                    Respectfully submitted,

                                                          JAMES D. "BUDDY" CALDWELL
                                                          ATTORNEY GENERAL


                                        BY:        /s/ Patrick E, Henry
                                                   PATRICK E. HENRY (#21695)
                                                   SPECIAL ASSISTANT ATTORNEY GENERAL
                                                   THE HENRY FIRM, LLC
                                                   3888 SO. SHERWOOD FOREST BLVD.
                                                   III CELTIC CENTRE - SUITE J
                                                   BATON ROUGE, LA 70816
                                                   TELEPHONE: (225) 910-8692
                                                   FACSIMILE: (225) 910-8853

                                                   *Attorney for the Dept. of Public Safety & Corrections*

# CERTIFICATE OF SERVICE

I hereby certify that on **October 4th, 2013**, the foregoing Memorandum in Opposition to Summary Judgment was electronically filed with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel by operation of the Court's electronic filing system.

Baton Rouge, Louisiana, this  4th  day of    October   , 2013.

 /s/ Patrick E. Henry 
**PATRICK E. HENRY**